UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
———————————————————X
ALEX AFSHIN DANESHRAD,

              Plaintiff,

  -against-                                    **OPINION & ORDER**
                                                 **05 CV 2662 (SJF)(ETB)**
COHEN & SLAMOWITZ, LLP, et al.

              Defendants.
———————————————————X
FEUERSTEIN, J.

I.     Introduction

     Plaintiff Alex Afshin Daneshrad ("Plaintiff") commenced this action by filing a Complaint on May 31, 2005 and an Amended Complaint on August 8, 2005, against defendants Cohen & Slamowitz, LLP ("Cohen & Slamowitz"), Danielle Seid, David A. Cohen, Mary D. Milone, Leandre M. John, Mitchell Selip, Mitchell G. Slamowitz, John Doe and Jane Doe 1-20 (collectively, the "Debt Collector Defendants"), Discover Financial Services Inc. ("Discover"), David W. Nelms, Robert M. Murphy, Beth Cunningham, John Doe and Jane Doe 1-20 (collectively, with the Debt Collector Defendants, "Defendants"), asserting claims under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), 18 U.S.C. § 1341 ("§ 1341") and New York General Business Law § 601 ("§ 601"). Defendants now move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56"). For the reasons set forth below, the motion of Defendants is granted.

II.  Background[1]

This action arises out of a dispute between Plaintiff and Discover in connection with a credit card agreement (the "Discover Cardmember Agreement"). On or about September 10, 2004, when Plaintiff had an outstanding balance of approximately seven thousand six hundred dollars ($7,600.00) under the Discover Cardmember Agreement,[2] Plaintiff sent Discover a letter entitled "Actual Notice And Demand For Adequate Assurance Of Due Performance" ("Plaintiff's September 2004 Letter") stating, *inter alia,* (1) that "[a]fter conducting a reasonable investigation," Plaintiff determined "that Discover may have breached the original credit card agreement by failing to provide adequate and valuable consideration and full disclosure of the original terms and conditions of the alleged original agreement;" (2) that the letter "was not to be construed as a refusal to pay" but "in order for [Plaintiff] to proceed with any further payments [Plaintiff is] requesting Discover execute the attached affidavit and return it to [Plaintiff] within thirty (30) days" affirming "whether Discover has followed the book keeping entries [sic] under Generally Accepted Accounting Principles ["GAAP"] . . . and the Federal Reserve Bank's Policies and Procedures;" and (3) advising Discover that its failure to respond within thirty (30) days "confirms that no further action will be taken, no further statements will be sent to [Plaintiff's] residence, and an absolute waiver to collect, sell or transfer the alleged debt." (Pl.'s Sept. 2004 Letter, p.1.)

---

[1] The facts are derived from the parties submissions and evidentiary materials submitted in connection with the instant motion for summary judgment. Unless otherwise stated, all letters cited are attached as exhibits to the Amended Complaint.

[2] According to Plaintiff's credit card statements from Discover, Plaintiff had an outstanding balance of seven thousand six hundred ninety-eight dollars and ninety-one cents ($7,698.91) as of September 12, 2004.

2

In response, Discover sent Plaintiff a letter dated September 30, 2004 ("Discover's September 2004 Letter"), stating, *inter alia*, that, "in response to [Plaintiff's] request for validation of [Plaintiff's] debt with Discover," Plaintiff's "outstanding balance is $7,698.91 and is explained in detail by the billing statements that were sent to [Plaintiff] under separate cover," and referring Plaintiff to the Discover Cardmember Agreement for the terms of Plaintiff's account, including Plaintiff's agreement to pay. (Discover's Sept. 2004 Letter, p.1.)

Discover and Plaintiff subsequently exchanged a series of letters, including a letter from Plaintiff to Discover dated October 16, 2004, entitled "Notice of Dispute" ("October 2004 Notice of Dispute"), stating, *inter alia*, that Discover is: (1) in "default" for failing to provide Plaintiff with the assurances demanded in Plaintiff's September 2004 Letter; (2) "to credit [Plaintiff's] account for the full amount in dispute under 15 U.S.C. § 1666d" ("§ 1666d")[3] and (3) to provide certain information to Plaintiff, including: (1) the names, addresses and telephone numbers of Discover's "legal department" and "independent CPA Financial auditor;" (2) "the name, address and title of the officer in charge of the alleged account;" (3) "a front and back, true and correct copy of the alleged signed agreement;" (4) "a certified copy of the accounting ledger describing [Plaintiff's] account with particularity;" and (5) "[a]n identification of the source of funds used to fund all charges to the account, including account name(s), number(s), and account(s)." (Oct. 2004 Notice of Dispute, p.1-2.)

---

[3] Section 1666d provides, *inter alia*, that, "[w]henever a credit balance in excess of $1 is created in connection with a consumer credit transaction . . . the creditor shall . . . (A) credit the amount of the credit balance to the consumer's account; (B) refund any part of the amount of the remaining credit balance, upon request of the consumer; and (C) make a good faith effort to refund to the consumer . . . any part of the amount of the credit balance remaining in the account for more than six months . . . ." 15 U.S.C.A. § 1666d

On or about November 9, 2004, Cohen & Slamowitz sent Plaintiff a collection letter ("2004 Collection Letter") identifying itself as a debt collector attempting to collect a debt owed by Plaintiff to Discover, in the amount of seven thousand nine hundred twenty-two dollars and three cents ($7,922.03), and informing Plaintiff if he disputed the validity of the debt within thirty (30) days, Cohen & Slamowitz would, *inter alia,* mail Plaintiff verification of the debt. (2004 Collection Letter, p.1.)

Cohen & Slamowitz subsequently sent Plaintiff several letters, including: (1) a letter dated December 6, 2004 ("Cohen & Slamowitz December 2004 Letter), stating, *inter alia*, that Discover had authorized the commencement of suit against Plaintiff and that Discover would be seeking the principal balance due, interest, costs and attorney's fees; and (2) a letter dated on or about December 31, 2004, which included copies of Plaintiff's credit card application, the Discover Cardmember Agreement, and Plaintiff's credit card statements.

Plaintiff responded to Cohen & Slamowitz by letter dated December 9, 2004 ("December 2004 Notice of Dispute") stating, *inter alia*, that: (1) Discover was "violating the Fair Credit Billing Act;" (2) Plaintiff was "in the process of filing complaints with the Attorney General and the [Federal Trade Commission];" and (3) Cohen & Slamowitz should "cease and desist collection." (Dec. 2004 Notice of Dispute, p.1.) Plaintiff subsequently sent numerous letters to Cohen & Slamowitz stating, *inter alia*, that the debt was in dispute and that Plaintiff was seeking verification of the debt.

In or about January 2005, Discover commenced an action against Plaintiff in the First District Court of Nassau County, New York ("Nassau County District Court action") to recover the unpaid balance Plaintiff owed to Discover under the Discover Cardmember Agreement. By

Order dated July 15, 2005 ("July 2005 Order"), the Nassau County District Court granted summary judgment pursuant to New York Civil Practice Law and Rules § 3212 in Discover's favor and directed judgment be entered for Discover in the amount of seven thousand eight hundred ninety-six dollars and seventy-two cents ($7,896.72) with interest, attorney's fees in the amount of one thousand five hundred seventy-nine dollars and thirty-four cents ($1,579.34), costs and disbursements. (See July 2005 Order, attached as Ex. C to Defs.' Affirm in Supp. of Summ. J. Mot., filed Dec. 23, 2008, p.2.)

III. Discussion

A. Legal Standard

Summary judgment should not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (citations and quotation marks omitted). "A fact is material when it might affect the outcome of the suit under governing law." Id. An issue of fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of establishing the absence of any genuine issue of material fact, after which the burden shifts to the nonmoving party to establish the existence of a factual question that must be resolved at trial. See Koch v. Town of Brattleboro, Vermont, 287 F.3d 162, 165 (2d Cir. 2002) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

"In order to defeat a motion for summary judgment supported by proof of facts that would entitle the movant to judgment as a matter of law, the nonmoving party is required under Rule 56(e) to set forth specific facts showing that there is a genuine issue of material fact to be tried . . . . If the nonmoving party does not so respond, summary judgment will be entered against him." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (citations omitted). The nonmoving party "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible . . . , or 'upon the mere allegations or denials of the [nonmoving] party's pleading.'" Id. (quoting Fed. R. Civ. P. 56(e)).

B.  Plaintiff's *Pro Se* Status

Where a plaintiff is proceeding *pro se*, the court must review the *pro se* party's supporting papers liberally, and "interpret them to raise the strongest arguments that they suggest." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (citation and quotation marks omitted); see also Weinstein v. Albright, 261 F.3d 127, 132 (2d Cir. 2001). Nevertheless, a *pro se* plaintiff's "bald assertion," without evidentiary support will not defeat a motion for summary judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991); see Columbo v. United States Postal Serv., 293 F. Supp. 2d 219, 222 (E.D.N.Y. 2003) ("*pro se* status does not exempt a

party from compliance with relevant rules of procedural and substantive law") (citation and quotation marks omitted); see also Karl v. Asarco Inc., No. 02 Civ. 5565, 2004 WL 2997872, at *3 (S.D.N.Y. Dec. 23, 2004) (liberal standard does not excuse a *pro se* plaintiff from "following the procedural formalities of summary judgment"); Saldana v. Local 32B-32J Serv. Employer Int'l Union, No. 03 Civ. 1853, 2005 WL 66895, at *2 (S.D.N.Y. Jan.12, 2005) ("Even a *pro se* plaintiff, however, cannot withstand a motion for summary judgment by relying merely on the allegations of the complaint. Rather, when confronted with evidence of facts that would support judgment in the defendant's favor as a matter of law, the plaintiff must come forward with evidence in admissible form that is capable of refuting those facts.").

C.  FDCPA

Congress enacted the FDCPA "with the aim of eliminating abusive practices in the debt collection industry, and also sought to ensure that 'those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged.'" Jacobson v. Healthcare Fin. Servs, Inc., 516 F.3d 85, 89 (2d Cir. 2008) (quoting 15 U.S.C. § 1692(e)). The FDCPA, *inter alia*, "prohibits conduct whose natural consequence is to 'harass, oppress, or abuse any person in connection with the collection of a debt,' . . . [a]nd it bars the use of 'any false, deceptive, or misleading representation or means in connection with the collection of any debt,' . . . while proscribing 'unfair or unconscionable means to collect or attempt to collect any debt.'" Jacobson, 516 F.3d at 89 (quoting 15 U.S.C. §§ 1692d-1692f).

The "[FDCPA] imposes strict liability," therefore, "a consumer need not show intentional conduct by the debt collector to be entitled to damages." Russell v. Equifax A.R.S., 74 F.3d 30,

33 (2d Cir. 1996). "[A] debt collector," however, "may escape liability if it can demonstrate by a preponderance of the evidence that its 'violation [of the FDCPA] was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.'" Id. at 33-34 (quoting 15 U.S.C. § 1692k(c)).

To determine whether the FDCPA has been violated, a court must apply an objective standard, measured by how the "least sophisticated consumer" would interpret the debt collector's notice. Jacobson, 516 F.3d at 90 (citing Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993)). The purpose of this objective standard is to "ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." Clomon, 988 F.2d at 1318. "But in applying this standard, we bear in mind the [FDCPA's] dual purpose: in addition to protecting consumers against deceptive debt collection practices, the objective test we apply protects debt collectors from unreasonable constructions of their communications." Jacobson, 516 F.3d at 90 (citation and quotation marks omitted); see also Clomon, 988 F.2d at 1319 (stating that "in crafting a norm that protects the naive and the credulous the courts have carefully preserved the concept of reasonableness") (citation omitted).

"[T]he FDCPA expressly limits its application to debt collectors, not creditors." Doherty v. Citibank (South Dakota) N.A., 375 F. Supp. 2d 158, 162 (E.D.N.Y. 2005); see Alibrandi v. Financial Outsourcing Servs, Inc., 333 F.3d 82, 85 (2d Cir. 2003) (stating that "creditors generally are not subject to the FDCPA"); see also 15 U.S.C. § 1692(e) (stating that the purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors"). However, a creditor is subject to the FDCPA, if "in the process of collecting his own debts," a creditor "uses any name other than his own which would indicate that a third person is collecting or attempting

to collect such debts," meaning that a creditor "uses a name that implies that a third party is involved in collecting its debts, pretends to be someone else or uses a pseudonym or alias." Maguire v. Citicorp Retail Servs, Inc., 147 F.3d 232, 235 (2d Cir. 1998).

Discover is not subject to liability under the FDCPA because it is a creditor, not a debt collector. See 15 U.S.C.A. § 1692a (stating that a "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another"). In addition, there is no evidence that Discover "uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." Maguire, 147 F.3d at 232 (citation and quotation marks omitted).

Plaintiff alleges that the Debt Collector Defendants violated §§ 1692e(2),(8) and (10), 1692f(1), and 1692g(b) of the FDCPA.[4] A debt collector violates the FDCPA if a debt collector: (1) makes a "false representation of . . . the character, amount, or legal status of any debt," or "any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt," 15 U.S.C. § 1692e(2)(a) and (b); (2) "communicat[es] or threaten[s] to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed," 15 U.S.C. § 1692(8); (3) "use[s] any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," 15 U.S.C. § 1692(10); and (4)

---

[4] Plaintiff also alleges that Debt Collector Defendants violated § 1692k, however, that section provides for actual and "additional" damages for violations of the FDCPA. 15 U.S.C. § 1692k.

9

attempts to collect "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law," 15 U.S.C. § 1692f(1). However, there is no evidence indicating that the Debt Collector Defendants made any false representations, communicated or threatened to communicate any false credit information, used false representations or deceptive means to collect the unpaid balance that Plaintiff owed Discover, or attempted to collect any amount that was not expressly authorized by the Discover Cardmember Agreement.

Rather Plaintiff alleges that § 1692e was violated based upon, *inter alia*, the Debt Collector Defendants' (1) failure to acknowledge Plaintiff's dispute letters; (2) failure to verify and validate the debt; (3) failure to disclose the debt was in dispute to the Nassau County District Court and to credit reporting agencies; and (4) "adding on attorney's fees of $1,579.43" in the Nassau County District Court action. (Am. Compl. ¶ 11.) However, the evidence indicates that Defendants responded to Plaintiff's dispute letters by providing Plaintiff with verification of the unpaid balance, copies of Plaintiff's monthly credit card statements and copies of the Discover Cardmember Agreement. Although Plaintiff does not dispute that he received such verification, he contends that such documents are not responsive. Specifically, Plaintiff contends that the debt is in "dispute" based upon, *inter alia*, Discover's failure to inform Plaintiff whether it complies with "[GAAP] and the Federal Reserve Bank's Policies and Procedures." (Pl.'s Sept. 2004 Letter, p.1.) However, Plaintiff does not assert any legal basis to substantiate his claim that, *inter alia*, Discover's failure to "admit[]" or "deny[]" its compliance is "an absolute waiver of any right to collect, sell or transfer the alleged debt." (Id.) Simply because Plaintiff, after receiving verification of the debt, continually sends Defendants letters stating that the debt is "in dispute,"

10

does not prevent Discover from asserting its rights to collect any unpaid balance that Plaintiff owes Discover pursuant to the Discover Cardmember Agreement.

To the extent that Plaintiff asserts that Defendants made false representations or used deceptive means with respect to their claim in Nassau County District Court for attorney's fees, such claim is without merit. The Discover Cardmember Agreement expressly states that, if an account is in default, Discover may seek reasonable attorney's fees, court costs and collection fees. Likewise, Plaintiff's assertion that the Debt Collector Defendants attempted to collect monies that were not expressly authorized under the Credit Card Agreement is also without merit since the Discover Cardmember Agreement contains complete disclosure of its terms and conditions, including Plaintiff's obligation to pay, and expressly authorizes the imposition of *inter alia*, finance charges, late fees, overlimit fees and collection fees.

Similarly, Plaintiff's claim that the Debt Collector Defendants violated § 1692g fails. Pursuant to § 1692g(a), a debt collector is required to send an alleged debtor a written notice stating, *inter alia,*:

> (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a). This information, commonly referred to as a "validation notice," arms the consumer with the facts necessary to challenge the debt allegedly owed prior to submitting payment to the collection agency. Russell, 74 F.3d at 32-33; see also Rumpler v. Phillips &

Cohen Assocs., 219 F. Supp. 2d 251, 258 (E.D.N.Y. 2002).

>Section § 1692g(b) provides that:
>
>If the consumer notifies the debt collector in writing within the thirty-day period . . . that the debt, or any portion thereof, is disputed, . . . , the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt . . . and a copy of such verification . . . is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) of this section unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed . . . . Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

15 U.S.C. § 1692g(b).

"However, 'it is not enough for a debt collection agency simply to include the proper debt validation notice in a mailing to a consumer-Congress intended that such notice be clearly conveyed.'" Rumpler, 219 F. Supp. 2d at 258 (quoting Russell, 74 F.3d at 35). The FDCPA is violated where a debt collection letter contains language that "overshadows or contradicts" language in the validation notice. Russell, 74 F.3d at 34. "'A debt collection notice is overshadowing or contradictory if it fails to convey the validation information clearly and effectively and thereby makes the least sophisticated consumer uncertain as to her rights.'" Miller v. Wolpoff & Abramson, L.L.P. 321 F.3d 292, 309 (2d Cir. 2003) (quoting Savino v. Computer Credit, Inc., 164 F.3d 81, 85 (2d Cir. 1998)); see Orenbuch v. North Shore Health Sys., 250 F. Supp. 2d 145, 153 (E.D.N.Y. 2003). The FDCPA is also violated if the collector conveys the required information "in a confusing or contradictory fashion so as to cloud the required message with uncertainty." DeSantis, 269 F.3d at 161; see also Rumpler, 219 F. Supp. 2d at 258.

12

"Whether the particular wording of a letter violates the FDCPA is an issue of law that can be decided by a court on a motion for summary judgment." Harry v. Pentagroup Fin., LLC, No. 04 Civ. 4003, 2007 WL 812998, at * 2 (E.D.N.Y. Mar. 14, 2007) (citing Miller, 321 F.3d at 310-11 (finding as a matter of law that the defendant's collection letters were not false, deceptive or misleading to the least sophisticated consumer); Berger v. Suburban Credit Corp., 04 Civ. 4006, 2006 WL 2570915, at *3 (E.D.N.Y. Sept. 5, 2006) (stating that "the Second Circuit has indicated that the determination of how the least sophisticated consumer would view language in a defendant's collection letter is a question of law because the standard is an objective one")).

The 2004 Collection Letter complies with § 1692(g) because it states, *inter alia*, the amount of the debt and the name of the creditor and contains a validation notice (the "Validation Notice") stating that:

> UNLESS YOU DISPUTE THE VALIDITY OF THIS DEBT OR ANY PORTION THEREOF WITHIN 30 DAYS AFTER RECEIPT OF THIS NOTICE, THE ABOVE DEBT WILL BE ASSUMED TO BE VALID BY THIS OFFICE. SHOULD YOU NOTIFY THIS OFFICE IN WRITING AT THE ADDRESS SHOWN ABOVE WITHIN 30 DAYS AFTER RECEIPT OF THIS NOTICE THAT THE DEBT OR ANY PORTION THEREOF IS DISPUTED, WE WILL OBTAIN AND MAIL TO YOU VERIFICATION OF THE DEBT OR A COPY OF THE JUDGMENT, IF ANY, AND IF ALSO REQUESTED, THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR.

(2004 Collection Letter, p.1.)

Plaintiff alleges that the Debt Collector Defendants' communications are: (1) "misleading and misrepresenting in form and content;" and (2) "creat[e] confusion and induc[e] loss of [Plaintiff's] validation rights" in violation of § 1692g(b). (Am. Compl. ¶ 13.) However, the Court finds that the Debt Collectors communications are not misleading, contradicting, deceptive or confusing. A review of the 2004 Collection Letter reveals that even the least sophisticated

13

consumer would understand that he could dispute the debt and request validation of the debt. To the extent that Plaintiff asserts that the 2004 Collection Letter is contradictory or confusing because it contains both a Validation Notice and an instruction that Plaintiff contact Cohen & Slamowitz to make arrangements for payment, such claim also fails. See Lerner v. Forster, 240 F. Supp. 2d 233, 238 (E.D.N.Y. 2003) (stating that "[i]t does not follow that simply because a collection letter instructs a consumer to contact a debt collector that the validation notice is necessarily overshadowed or contradicted); see also Schweizer v. Trans Union Corp., 136 F.3d 233, 237 (2d Cir. 1998) (stating that "[t]he FDCPA does not extend to every bizarre or idiosyncratic interpretation by a debtor of a creditor's notice") (citation and quotation marks omitted).

Similarly, Plaintiff's assertion that he was misled or confused about his right to dispute the debt and request validation of the debt based upon any subsequent communication from the Debt Collector Defendants or Discover filing suit against Plaintiff in the Nassau County District Court, is without merit. Indeed, even after Plaintiff received such communications and such suit was filed, he repeatedly sent Defendants letters requesting validation and disputing the debt.

Plaintiff further alleges that the Debt Collector Defendants violated § 1692g(b) based upon, *inter alia*, the Debt Collector Defendants' "willfull[] and knowing[] refus[al] to: acknowledge [Plaintiff's] dispute, verify and validate [Plaintiff's] request, and cease and desist all debt collection efforts." (Am. Compl. ¶ 13.) As noted above, the Debt Collector Defendants responded to Plaintiff's dispute, verified Plaintiff's balance due and sent copies of Plaintiff's credit card statements and the Discover Cardmember Agreement.

In addition there is no evidence indicating that, after Plaintiff requested that the Debt

14

Collector Defendants "cease and desist" their collection efforts, that the Debt Collector Defendants did not comply with the FDCPA. Pursuant to § 1692c,

> If a consumer notifies a debt collector . . . that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except: (1) to advise the consumer that the debt collector's further efforts are being terminated; (2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or (3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.

15 U.S.C. § 1692c.

Plaintiff requested in his December 2004 Letter that the Debt Collector Defendants "cease and desist collection" but he also requested that the Debt Collector Defendants provide verification of the debt, which Cohen & Slamowitz subsequently provided to Plaintiff.

Accordingly, Plaintiff's claims pursuant to the FDCPA are dismissed.

D.  TILA

The purpose of the TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601. "Accordingly, the [TILA] requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." Beach v. Ocwen Federal Bank, 523 U.S. 410, 412, 118 S.Ct. 1408, 1410 (1998) (citing 15 U.S.C. §§ 1631, 1632, 1635, 1638). Failure to comply with the TILA "subjects a lender to criminal penalties for noncompliance, see § 1611, as well as to statutory and actual damages traceable to a lender's

failure to make the requisite disclosures, see § 1640." Id.

Although Plaintiff alleges that Discover "refuses to disclose the true correct terms and conditions" of the Discover Cardmember Agreement, (Pl.'s Aff., attached as Ex. to Am. Compl., ¶ 22), a review of the Discover Cardmember Agreement indicates a clear and accurate disclosure of its terms and conditions, including finance charges, late fees, overlimit fees, collection costs and Plaintiff's promise to pay.

Plaintiff alleges, however, that Defendants violated the TILA based upon, *inter alia*, Defendants: (1) "false accusations about the alleged debt never being disputed on the complaint form in county court,"(Pl.'s Opp'n to Defs.' Mot. For Summary J., filed Dec. 16, 2008, ¶ 2); (2) "fail[ure] to provide [validation] of the alleged debt," (Am. Compl. ¶ 15); and (3) "willful intentions of bad faith," (id. at ¶ 16). However, even if Defendants alleged in its pleadings in the Nassau County District Court that Plaintiff did not dispute the debt, such conduct does not implicate the TILA. See Bros. Ford v. Valencia, 452 U.S. 205, 219-220, 101 S.Ct. 2266, 2274, 68 L.Ed.2d 783 (1981) ("The purpose of the TILA is to promote the informed use of credit by consumers) (citations and quotations omitted); see also Turner v. General Motors Acceptance Corp., 180 F.3d 451, 454 (2d Cir. 1999) (explaining that the TILA is a disclosure statute). Likewise, Plaintiff's contention that Defendants did not validate the debt based upon, *inter alia*, Defendants' failure to respond to Plaintiff's demand that Discover submit an affidavit affirming that it is in compliance with "[GAAP] and the Federal Reserve Bank's Policies and Procedures," (Pl.'s Sept. 2004 Letter), does not implicate the TILA. Contrary to Plaintiff's assertions, there is sufficient evidence to show that Defendants timely responded to Plaintiff's dispute letters and provided Plaintiff with verification of his balance due, copies of his monthly credit card

16

statements and copies of the Discover Cardmember Agreement. Further, there is no evidence indicating that Defendants acted in bad faith.

Plaintiff also claims that the TILA was violated because Defendants failed to inform reporting agencies that the debt was in dispute. The TILA requires that, under certain circumstances, when an obligor reports a billing error to a creditor, the creditor may not report the account delinquent to a third party unless the creditor also reports that the amount is in dispute. See, e.g., 15 U.S.C. § 1666a(b) ("If a creditor receives a further written notice from an obligor that an amount is still in dispute within the time allowed for payment under subsection (a) of this section, a creditor may not report to any third party that the amount of the obligor is delinquent because the obligor has failed to pay an amount which he has indicated under section 1666(a)(2) of this title, unless the creditor also reports that the amount is in dispute and, at the same time, notifies the obligor of the name and address of each party to whom the creditor is reporting information concerning the delinquency.") Plaintiff, however, has not alleged a billing error within the meaning of the TILA. See 15 U.S.C. § 1666(b) (stating that a "billing error" is: (1) "[a] reflection on a statement of an extension of credit which was not made to the obligor or, if made, was not in the amount reflected on such statement;" (2) "[a] reflection on a statement of an extension of credit for which the obligor requests additional clarification including documentary evidence thereof;" (3) "[a] reflection on a statement of goods or services not accepted by the obligor or his designee or not delivered to the obligor or his designee in accordance with the agreement made at the time of a transaction;" (4) "[t]he creditor's failure to reflect properly on a statement a payment made by the obligor or a credit issued to the obligor;" (5) "[a] computation error or similar error of an accounting nature of the creditor on a statement;"

17

(6) "[f]ailure to transmit the statement required under section 1637(b) of this title to the last address of the obligor which has been disclosed to the creditor . . .:" and (7) [a]ny other error described in regulations of the Board").

Although Plaintiff claims that Defendants violated § 1666(a) because he allegedly did not receive an acknowledgment of his dispute, "a written explanation report following a reasonable investigation," or "production of documents [sic] evidence," (Am. Compl. p.2), there is sufficient evidence indicating that Plaintiff received timely acknowledgments of his dispute and verification of the debt, including a statement of his balance due under the Discover Cardmember Agreement, and copies of the Discover Cardmember Agreement and Plaintiff's credit card statements, to overcome this claim. (See, e.g., Discover's Sept. 2004 Letter.)

Accordingly, Plaintiff's claims pursuant to the TILA are dismissed.

E.  Plaintiff's Remaining Claims

Plaintiff alleges various claims against Defendants pursuant to § 1341 and § 601, including, *inter alia*, mail fraud and that Defendants failed to disclose the debt was in dispute to credit reporting agencies. However, "[i]t is well-established that there is no private right of action" under § 1341. Garay v. United States Bancorp, 303 F. Supp. 2d 299, 303 (E.D.N.Y. 2004) (citing Silva v. Neumel, 152 F.3d 920 (2d Cir.1998); Pharr v. Evergreen Gardens, Inc., No. 03 Civ. 5520, 2004 WL 42262, at *1 n.2 (S.D.N.Y. Jan. 5, 2004); Fitzgerald v. Pharmacia Corp., No. 01 Civ. 6974, 2002 WL 826824, at *2 n.2 (S.D.N.Y. Apr. 30, 2002)); see Official Publ'ns, Inc. v. Kable News Co., 884 F.2d 664, 667 (2d Cir. 1989). Likewise, there is no private right of action under § 601. See Conboy v. AT & T Corp., 241 F.3d 242, 258 (2d Cir. 2001) (citing

Varela v. Investors Ins. Holding Corp., 81 N.Y.2d 958, 961, 598 N.Y.S.2d 761, 762, 615 N.E.2d 218 (1993)). Since Plaintiff may not assert claims under either statute, Plaintiff's claims pursuant to § 1341 and § 601 are dismissed.

IV. Conclusion

For the reasons stated herein, the motion of Defendants for summary judgment is GRANTED. The Clerk of Court is directed to close this case.

**SO ORDERED.**

_____
Sandra J. Feuerstein
United States District Judge

Dated: March 9, 2009
Central Islip, New York

Copies to:

Alex Afshin Daneshrad
22 Alpine Lane
Hicksville, NY 11801